IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| ROBERT ERIC LEE, ) | Civ. No. 11-00169 ACK-BMK |
| ) | |
| Plaintiff, ) | FINDINGS AND |
| ) | RECOMMENDATION THAT |
| vs. ) | DEFENDANT UNITED STATES |
| ) | OF AMERICA'S MOTION TO |
| METSON MARINE SERVICES, ) | TERMINATE MAINTENANCE |
| INC., ET AL., ) | AND CURE BE DENIED |
| ) | |
| Defendants. ) | |
| _____ ) | |

FINDINGS AND RECOMMENDATION THAT DEFENDANT UNITED
STATES OF AMERICA'S MOTION TO TERMINATE
MAINTENANCE AND CURE BE DENIED

Before the Court is Defendant United States of America's Motion to Terminate Maintenance and Cure (Doc. 69). The Court heard this Motion on August 28, 2012. After careful consideration of the Motion, the supporting and opposing memoranda, and the arguments of counsel, the Court finds and recommends that Defendant's Motion be DENIED.

BACKGROUND

Plaintiff Robert E. Lee has a history of back injuries and back pain. Some of those injuries occurred while he was employed as a seaman. Prior to June 2010, Plaintiff underwent back surgery, but he continued to experience back pain.

Dr. Allen W. Jackson conducted an independent medical examination on Plaintiff and completed his report on June 29, 2010. (Defendant Ex. B.) He noted that Plaintiff was experiencing pain in his back and left lower extremity. (Id.) Dr. Jackson also noted that nearly a year had passed since Plaintiff underwent back surgery and opined that "Plaintiff is approaching [maximum medical improvement[1]] at this point in time." (Id. at 8.)

Plaintiff later visited Dr. Wu Zhuge, an orthopedic surgeon, on April 13, 2011. (Defendant Ex. C.) Plaintiff complained of "chronic debilitating left leg pain." (Id. at 3.) Dr. Zhuge recommended various treatments, including an electromyography test ("EMG") if the other recommended treatments did not result in pain relief. (Id. at 3.) Plaintiff subsequently underwent an EMG, and Dr. Zhuge reviewed the results. (Defendant Ex. D.) After meeting with Plaintiff and reviewing the EMG results, Dr. Zhuge informed Plaintiff that "surgery to remove the scar around the nerve roots is doable, but the result is very unpredictable." (Id. at 2.) Indeed, surgery might "make his back condition worse." (Defendant Ex. E.) Instead of recommending surgery, Dr. Zhuge recommended that Plaintiff undergo

---

[1] Maximum medical improvement will be referred to as "MMI" throughout this document.

a "spinal cord stimulator trial," which "help[s] those patients who have failed previous back surgery." (Defendant Exs. D, E.)

On November 23, 2011, Plaintiff visited Dr. Kelvin D. Franke, who also recommended a "spinal cord stimulator evaluation." (Defendant Ex. F.) Plaintiff visited Dr. Nazanin Jafarian a few weeks later. (Defendant Ex. G.) Dr. Jafarian recommended "a multi-modal approach" for Plaintiff's treatment, including weight management, medication adjustment, spinal cord stimulation, and physical therapy, which could "improve cervical and upper extremity muscular strength and range of motion." (Id. at 3.)

Dr. Jackson, who had examined Plaintiff in 2010, prepared another report on March 23, 2012 after reviewing more recent medical records. (Defendant Ex. H.) In June 2010, Dr. Jackson had opined that Plaintiff was "approaching MMI" at that time. (Defendant Ex. B.) However, in his March 2012 report, Dr. Jackson stated: "It is my opinion that [Plaintiff] is at maximal medical improvement." (Defendant Ex. H at 5.) He also opined that "spinal cord stimulation is not curative but is palliative if successful for controlling chronic radicular pain." (Id.)

Finally, on May 8, 2012, Plaintiff was examined by Dr. Richard S. Goka. (Plaintiff Ex. A.) Dr. Goka disagreed with Dr. Jackson's June 2010 and March 2012 opinions regarding MMI:

> It is my opinion [Plaintiff] did not reach maximum medical improvement in June 2010 nor has he reached MMI yet. He had not reached a plateau in his treatment nor was it unlikely that any further treatment would not improve his function. All treatment options have not been exhausted.

(Id. at 11.) Dr. Goka suggested the following treatments for Plaintiff, which he believed would "improve his ability to function": spinal cord stimulator, pharmacological trials, intrathecal medication, and a functional restoration pain program. (Id. at 8, 10 ("[I]n my opinion the above treatment options will improve his functionality and will reasonably control his pain without major side effects.")) Dr. Goka stated that the "treatments outlined above are necessary to maximize [Plaintiff's] function in activities of daily living and possible return to some gainful employment." (Id. at 12.)

## DISCUSSION

In the present Motion, Defendant seeks to terminate maintenance and cure payments to Plaintiff.

"A seaman injured in the service of the ship is entitled to maintenance and cure until he reaches the point of maximum medical cure," also called

4

maximum medical improvement or MMI.  <u>Light v. Jack's Diving Locker</u>, CV. NO. 05-00706 BMK, 2007 WL 4321715, at *1 (D. Haw. Dec. 11, 2007) (citing <u>Farrell v. United States</u>, 331 U.S. 511, 518 (1949)).  Payments for maintenance and cure are "designed to ensure the recovery of [seamen] upon injury or sickness sustained in the service of the ship."  <u>Pelotto v. L & N Towing Co.</u>, 604 F.2d 396, 400 (5th Cir. 1979).  "Maintenance and cure are due without regard to the negligence of the employer or the unseaworthiness of the ship."  <u>Id.</u>  "Maintenance is a per diem living allowance, paid so long as the seaman is outside the hospital and has not reached the point of 'maximum cure.'"  <u>Id.</u>  "Cure involves the payment of therapeutic, medical, and hospital expenses not otherwise furnished to the seaman, again, until the point of 'maximum cure.'"  <u>Id.</u>

Maximum medical cure or maximum medical improvement is achieved "when it appears probable that further treatment will result in no betterment of the seaman's condition."  <u>Light</u>, 2007 WL 4321715, at *1 (citing <u>Pelotto</u>, 604 F.2d at 400).  "Thus, where it appears that the seaman's condition is incurable, or that future treatment will merely relieve pain and suffering but not otherwise improve the seaman's physical condition, it is proper to declare that the point of maximum cure has been achieved."  <u>Pelotto</u>, 604 F.2d at 400; <u>see</u> <u>Sefcik v. Ocean Pride Alaska, Inc.</u>, 844 F. Supp. 1372, 1373 (D. Alaska 1993) ("Maximum

cure is reached when it is medically determined that further improvement in a plaintiff's health is not reasonably possible."). "The obligation to 'cure' a seaman includes the obligation to provide him with medications and medical devices that will improve his ability to function, even if they do not improve his actual condition." Messier v. Bouchard Transp., 756 F. Supp. 2d 475, 481 (S.D.N.Y. 2010).

"Although the injured seaman bears the burden of establishing that he is eligible for maintenance and cure, the shipowner has the burden of proving that maximum medical cure has been reached." Light, 2007 WL 4321715, at *1 (citing Smith v. Delaware Bay Launch Serv., 972 F. Supp. 836, 848 (D. Del. 1997)). The "decision to terminate must be unequivocal." Sefcik, 844 F. Supp. at 1373. All available medical evaluations should be considered in deciding whether to terminate maintenance and cure payments. Id. "Any ambiguities whether maximum cure has been reached are to be resolved in favor of the seaman." Id. at 1374.

Defendant argues that Plaintiff "has reached the point of maximum medical improvement" and that, therefore, "maintenance and cure benefits should be terminated." (Motion at 7.) Defendant points to various medical records and reports, including both of Dr. Jackson's reports. In the June 29, 2010 report, Dr.

Jackson stated that Plaintiff "is approaching MMI at this point in time." (Defendant Ex. B.) In his March 23, 2012 report, which was based on more recent medical records, Dr. Jackson stated: "It is my opinion that [Plaintiff] is at maximal medical improvement." (Defendant Ex. H.) Defendant also argues that, because the recommended spinal cord stimulation treatment is palliative and not curative, "Plaintiff is no longer entitled to maintenance and cure and those benefits should be terminated." (Motion at 10.)

        Plaintiff counters that he has not reached maximum medical improvement and supports this argument with the independent medical examination report of Dr. Goka, who evaluated Plaintiff on May 8, 2012. In his report dated June 15, 2012, Dr. Goka disagreed with Dr. Jackson's opinion that Plaintiff reached maximum medical improvement: "In my opinion [Plaintiff] did not reach maximum medical improvement in June 2010 nor has he reached MMI yet." (Plaintiff Ex. A.) Dr. Goka supported his opinion by stating that Plaintiff "had not reached a plateau in his treatment nor was it unlikely that any further treatment would not improve his function. All treatment options have not been exhausted." (Id.) Indeed, Dr. Goka outlined possible treatments that he believed "are necessary to maximize [Plaintiff's] function in activities of daily living and possible return to some gainful employment." (Id.) Dr. Goka continued: "Once

[Plaintiff] has received optimal treatment and stabilized, then and only then can he be consider[ed] to have reached Maximum Medical Improvement." (Id.)

As noted above, "the decision to terminate must be unequivocal" and that decision shall be based on "all available medical evaluations." Sefcik, 844 F. Supp. at 1373. Further, "[a]ny ambiguities whether maximum cure has been reached are to be resolved in favor of the seaman." Id. at 1374. The Court finds that the evidence provided by Plaintiff and Defendant establishes the lack of "an unequivocal endorsement that [Plaintiff] attained maximum cure." Id. Indeed, Dr. Jackson opined in March 2012 that Plaintiff reached MMI, while Dr. Goka opined more recently that Plaintiff has not reached that status. (Defendant Ex. H; Plaintiff Ex. A.) In light of this disagreement as to whether Plaintiff reached maximum medical improvement, the Court finds that Defendant has not met its "burden of proving that maximum medical cure has been reached." Light, 2007 WL 4321715, at *1. Accordingly, the Court recommends that Defendant be "directed to continue maintenance payments until the issue is resolved at trial" or by further order of the Court.[2] See Sefcik, 844 F. Supp. at 1374 ("Because there is disagreement as to

---

[2] The Court's recommendation that Defendant continue to make maintenance and cure payments is based on the physicians' disagreement as to whether Plaintiff achieved maximum medical improvement. In reaching this recommendation, the Court need not and does not determine whether spinal cord stimulation treatment is palliative or curative and, therefore, the Court does not address whether to strike Dr. Jeffrey S. Wang's declaration, which was proffered solely for that issue.

whether additional psychological/psychiatric treatment is necessary for plaintiff, defendant is directed to continue maintenance payments until the issue is resolved at trial.").

## CONCLUSION

For the foregoing reasons, the Court finds and recommends that Defendant's Motion to Terminate Maintenance and Cure be DENIED.

Any objections to this Findings and Recommendation shall be filed in accordance with the Federal Rules of Civil Procedure and this Court's Local Rules.

Lee v. Metson Marine Servs., et al., Civ. No. 11-00169 ACK-BMK; FINDINGS AND RECOMMENDATION THAT DEFENDANT UNITED STATES OF AMERICA'S MOTION TO TERMINATE MAINTENANCE AND CURE BE DENIED.

DATED: Honolulu, Hawaii, October 30, 2012.

IT IS SO ORDERED.



/s/ Barry M. Kurren
United States Magistrate Judge
Dated: October 30, 2012

Lee v. Metson Marine Servs., et al., Civ. No. 11-00169 ACK-BMK; FINDINGS AND RECOMMENDATION THAT DEFENDANT UNITED STATES OF AMERICA'S MOTION TO TERMINATE MAINTENANCE AND CURE BE DENIED.

10